**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **BETTY FREELAND,** *et al.***,** | ) | **CASE NO. 4:09CV341** |
| | ) | |
| **PLAINTIFF,** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LIBERTY MUTUAL FIRE** | ) | **MEMORANDUM OPINION** |
| **INSURANCE COMPANY,** | ) | **AND ORDER** |
| | ) | |
| **DEFENDANT.** | ) | |

This matter is before the Court upon Defendant Liberty Mutual Fire Insurance Company's ("Liberty Mutual") Motion for Summary Judgment. (Dkt. # 18). Also before the Court is Plaintiffs Betty J. Freeland and John L. Freeland, Sr.'s (collectively "the Freelands") Cross-Motion for Summary Judgment. (Dkt. # 20). For the reasons that follow, Liberty Mutual's Motion is hereby **GRANTED** and Freelands' Motion is hereby **DENIED**.

**I. BACKGROUND**

The instant action arises out of a dispute regarding the amount of uninsured/underinsured motorist ("UM/UIM") coverage Liberty Mutual must provide the Freelands after their son, John L. Freeland, Jr., his wife, Tina Freeland, and their three children were involved in an automobile accident on March 7, 2007 ("the

1

Accident"). (Dkt. # 1 at ¶ 4).

The parties do not dispute the relevant facts in this case. On or about August 13, 1984, Liberty Mutual issued LibertyGuard Auto Polcy No. A02-288-407666-00 6 7 ("the Original Policy") to the Freelands. (Dkt. # 1 at ¶ 3; Dkt. #18 Ex. 2 at ¶1). The Freelands continually renewed the Original Policy, up and through the policy period in effect at the time of the Accident, November 2, 2006 to November 2, 2007 ("the Renewal Policy" or "the Renewal Policy Period"). (Dkt. # 18 Ex. 2 at ¶ 1-2).

Under the Original Policy and during the Renewal Policy Period, Liberty Mutual provided the Freelands $100,000 in bodily injury liability coverage, each accident. (Dkt. # 1 at ¶ 2). On May 22, 1999, the Freelands executed an Ohio Uninsured Motorists Bodily Injury Coverage selection/rejection form ("Selection/Rejection Form"), whereby the Freelands selected UM/UIM coverage in the amount of $12,500 per person and $25,000 per accident. (Dkt. # 1 at ¶ 2; Dkt. # 18 Ex. 3 at 46). In addition, Liberty Mutual issued the Freelands an amended Declarations page for Vehicle 4–the relevant automobile in this case–that became effective February 3, 2007 ("Amended Declarations Page"). (Dkt. # 18 Ex. 3 at 48-57). The Amended Declarations Page also provided $100,000 in bodily injury coverage and UM/UIM coverage in the amount of $12,500 per person and $25,000, per accident. Id.

John L. Freeland and his wife did not survive the Accident. (Dkt. # 18 Ex. 3 at

¶ 12). Their children survived the accident, but suffered serious injuries. Id. John L. Freeland Jr. was driving John L. Freeland, Sr. and Betty J. Freeland's vehicle with their permission at the time of the Accident. Id. The Freelands do not dispute that John L. Freeland, Jr. and his wife and children do not qualify as "insureds" under the Original Policy and that they were uninsured at the time of the Accident. (Dkt. # 18 Ex. 3 at ¶ 12). Nor do the Freelands dispute they executed the Original Policy, renewed the Original Policy during the Renewal Policy Period, or received the Declarations Page. Rather, the Freelands contend that the Selection/Rejection Form was invalid, and that, by operation of law, they are entitled to UM/UIM coverage equal to their liability coverage limit of $100,000. (Dkt # 1 at ¶ 3).

## II. STANDARD OF REVIEW

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56 (c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering such a motion, the court must review all of the evidence in the record. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)

(citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); accord Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 556-57 n.7 (6th Cir. 2000).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

"A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (quoting FED. R. CIV. P. 56 (c)).  The movant meets this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  Clayton v. Meijer, Inc., 281 F.3d 605, 609 (6th Cir. 2002) (quoting Celotex, 477 U.S. at 324-25).  The non-movant then "must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 250.

**III. LAW AND ANALYSIS**

**A. Ohio Revised Code § 3937.18**

In Ohio, the statutory requirements governing UM/UIM coverage have changed fluently in recent decades.  Ohio Revised Code Section 3937.18 has been amended by the Ohio legislature several times.  Prior versions of O.R.C. § 3937.18 prohibited insurance carriers from issuing an automobile policy unless they first offered their insured an amount of UM/UIM coverage equal to the amount of the policy's liability coverage.  Johnson v. Liberty Mut. Fire Ins. Co., 2004 WL 835875 at *3 (Ohio Ct. App. 2004) (citing Gyori v. Johnston Coca-Cola Bottling Group, Inc., 76 Ohio St. 3d 565, 567 (1996); Abate v. Pioneer Mut. Cas. Co., 22 Ohio St. 2d 161, 163 (1970)).  If a carrier failed to make such an offer, the insured was deemed, by operation of law, to acquire UM/UIM coverage in an amount equal to the policy's liability limit.  Id.

Later versions of O.R.C. § 3937.18 loosened UM/UIM regulations and allowed an insured to choose coverage limits less than the policy's liability limit.  Id. However, in Linko v. Indemnity Insurance Company of North America, 90 Ohio St. 3d 445 (2000), the Supreme Court of Ohio established specific requirements in order for an insured to validly reject UM/UIM coverage or select coverage less than the policy liability limits.  Under Linko, insurance carriers in Ohio were required to make a "meaningful" offer of UM/UIM coverage to their insured, including requiring that both the offer and the rejection of UM/UIM coverage be in writing, contain the premium charged, and include a brief description of the coverage limits offered.  Id.

at 449.  See also Gyori, 76 Ohio St.3d at 567-68 (1996).  If a carrier failed to meet these requirements, their UM/UIM selection/rejection forms were declared invalid. Linko, 90 Ohio St. 3d at 450.

## B. Ohio Senate Bill 267

In 2000, the Ohio General Assembly enacted Senate Bill 267, which amended O.R.C. § 3937.31.  S.B. 267 continued the requirement that carriers offer UM/UIM coverage and obtain a written and signed selection/rejection from the insured.  See 2000 S.B. 267, § 1 at App. pp. 53-54.  However, S.B. 267 clarified that new rejections of UM/UIM coverage or selection of lower limits of coverage are not required to be obtained from an insured "at the beginning of each policy period. . . regardless of whether a new, replacement, or renewal policy . . . is issued."  Id., § 4 at App. p. 58). In other words, insurance carriers no longer needed to obtain new UM/UIM rejection/selection forms at the commencement of each renewal period.

## C. Ohio Senate Bill 97

In 2001, the Ohio General Assembly radically altered the state of the law regarding UM/UIM coverage by enacting Ohio Senate Bill 97.  S.B. 97 eliminated the requirement altogether that insurance carriers in Ohio offer UM/UIM coverage to their insured.  S.B. 97 specifically states that the intent of the Ohio General Assembly in enacting the bill was to "express the public policy of the state" to: "Eliminate the possibility of uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages being implied as a matter of law in any insurance policy" and to "supersede the holdings of the Ohio Supreme Court in Linko

6

v. Indemnity Ins. Co. of N. America (2000), 90 Ohio St. 3d 445 [739 N.E.2d 338], Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St. 3d 660, Schumacher v. Kreiner (2000), 88 Ohio St. 3d 358, Sexton v. State Farm Mut. Auto. Ins. Co. (1982), 69 Ohio St. 2d 431 Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996) 76 Ohio St. 3d 565 [669 N.E.2d 824], and their progeny." 2001 S.B. 97, § 3(B)(2) & (E) at App. pp. 69, 71. Thus, automobile insurance policies in Ohio written after the enactment of S.B. 97 are no longer required to meet the requirements of Linko, Gyori, or the related cases that followed.

**D. The Freelands' Claim**

The crux of this case is a determination of what law should be applied to the Freeland's claim. The Freelands contend that the Original Policy, written in 1997, is "the policy at issue" in this case. If so, Kemper v. Michigan Millers Mut. Ins. Co., 98 Ohio St. 3d 162 (Ohio 2002), would control. In Kemper, the Supreme Court of Ohio considered the following two certified questions:

> (1) Are the requirements of Linko v. Indemnity Ins. Co. 2000, 90 Ohio St. 3d 445, 2000 Ohio 92, 739 N.E.2d 338, relative to an offer of UM/UIM coverage, applicable to a policy of insurance written after enactment of [1997] HB 261 and before [2001] SB 97?
>
> (2) If the Linko requirements are applicable, does, under [1997] HB 261, a signed rejection act as an effective declination of UM/UIM coverage, where there is no other evidence, oral or documentary, of an offer of coverage?

Kemper, 98 Ohio St. 3d at 162.

The Supreme Court answered the first question in the affirmative and the second in the negative. Therefore, in order for a rejection of UM/UIM coverage to be

valid, any policy "written after enactment of [1997] HB 261 and before [2001] SB 97," must still meet the requirements of Linko and Gyori.

Liberty Mutual, on the other hand, contends that this Court should apply the law in place on November 2, 2007, when the Renewal Policy Period commenced. The Sixth Circuit has explicitly stated that when determining the validity of a UM/UIM rejection, under Ohio law, "the statutory law in effect on the date of issue of each new policy is the law to be applied." Roberts v. Universal Underwriters Ins. Co., 334 F.3d 505, 506 (6th Cir. 2003) (citing Wolfe v. Wolfe, 88 Ohio St. 3d 246, 250 (2000)).

Nevertheless, the Freelands argue that because the Original Policy did not include a valid rejection of UM/UIM coverage, the Renewal Policy should also be deemed invalid based upon Roberts v. Universal Underwriters Ins. Co., 334 F.3d 505, 506 (6th Cir. 2003). In Roberts, the Sixth Circuit held that Senate Bill 97 did not exempt Universal from making an offer of UM/UIM coverage because the insured's initial rejection of UM/UIM coverage was invalid under the carrier's original policy. Id. at 512. The Sixth Circuit, therefore, found that the insured was entitled to the policy's liability limits. The Freelands argue that they are likewise entitled to a policy limit of $100,000 because even though the Accident occurred during the Renewal Policy Period, Liberty Mutual was not exempt from making a valid offer of UM/UIM coverage when the Original Policy was written.

Roberts, however, is distinguishable from the instant case because here the policy in effect at the time of the Accident—the Renewal Policy—was written and

8

executed after the enactment of S.B. 97. The Sixth Circuit made clear in Roberts that because the accident in that case occurred during a renewal policy of November 1, 1998 to November 1, 1999, the Court was compelled to apply the law in place as it existed on November 1, 1998. Id. at 508, fn 2. At that time, Kemper applied to require a written offer of UM/UIM coverage.

This Court finds that the Renewal Policy was the policy in effect at the time of the Accident. Therefore, the Court must apply the statutory law in place when the Renewal Policy commenced on November 2, 2007. At that time, Kemper no longer applied and Liberty Mutual was not required to meet the requirements of Linko and Gyori. In fact, because the policy was issued after the passage of S.B. 97, Liberty Mutual was not required to make an offer of UM/UIM coverage to the Freelands at all. There being no genuine issues of material fact disputed, Liberty Mutual is, therefore, entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons stated above, Liberty Mutual's Motion for Summary Judgment is hereby **GRANTED**. (Dkt. # 18). The Freelands' Cross-Motion for Summary Judgment is hereby **DENIED**. (Dkt. # 20).

**IT IS SO ORDERED.**

*/ s / Peter C. Economus* **- January 5, 2010**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**